Christian W. Liedtke (SBN 297523)
cw.liedtke@acuminis.biz
acuminis
3420 Bristol Street, 6th Floor
Costa Mesa, CA 92626
Phone: (949) 698-7840
Facsimile: (949) 698-7861

Attorney for Plaintiff,
Yeti Data, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Yeti Data, Inc., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Snowflake, Inc. f/k/a Snowflake Computing, Inc., a Delaware Corporation,<br><br>Defendant. | No. _____<br><br>**COMPLAINT FOR FALSE DESIGNATION OF ORIGIN, FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION, COMMON LAW TRADEMARK INFRINGEMENT, COMMON LAW UNFAIR COMPETITION, STATE UNFAIR AND DECEPTIVE TRADE PRACTICES, VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 *et. seq.*, UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Yeti Data, Inc. ("Plaintiff" or "Yeti Data") by and through its undersigned counsel, for its Complaint, hereby states and alleges against Defendant Snowflake, Inc. f/k/a Snowflake Computing, Inc. ("Defendant") as follows:

**NATURE OF THE CASE**

1.      Yeti Data's claims arise from Defendant's willful and blatant infringement of Yeti Data's federally registered YETI SNOWFLAKE mark, which it uses to brand its big data and

consumer data management solutions, and data analytics software. Defendant's unlawful acts are overt, opportunistic and willful attempts to cash in on and usurp the goodwill and value of Yeti Data's YETI SNOWFLAKE mark.

2.    For more than half a decade, Yeti Data has, with consistent and earnest effort, marketed and publicized its YETI SNOWFLAKE mark. Yeti Data's YETI SNOWFLAKE technology solutions are much loved by executives from client organizations around the world.

3.    Defendant never approached Yeti Data for a license or other kind of permission to use any of Yeti Data's trademarks.

4.    Defendant's use of the infringing SNOWFLAKE mark on the identical type of products and services is likely to deceive consumers into believing that Defendant's products come from the same source and are of the same quality as those of Yeti Data, when they are not. Given Defendant's aggressive and widespread marketing campaign, reverse confusion, i.e. the mistaken belief of consumers that Plaintiff is in fact infringing Defendant's purported trademarks or is somehow authorized by or affiliated with Defendant is also likely. Defendant's deceptive and infringing conduct further threatens the valuable goodwill Yeti Data developed in its marks by depriving Yeti Data of its right to control the reputation of products bearing its mark.

5.    Yeti Data hoped to resolve this matter amicably, without resorting to this Court. However, per its response to Yeti Data's cease and desist letter Defendant outright refused to engage in any dialogue that could lead to an amicable resolution. Thus, Yeti Data is left with no choice but to bring this suit.

6.    Defendant's inequitable conduct has and continues to cause confusion to the public and injury to Yeti Data. Yeti Data cannot stand by as Defendant willfully violates its YETI SNOWFLAKE mark. Defendant's campaign of illegal practices will continue unless and until this Court ends it. Therefore, Yeti Data seeks (a) injunctive relief to stop Defendant's deceptive and infringing activity and (b) monetary relief to divest Defendant of its appropriated sales and compensate Yeti Data for the harm suffered as a result of Defendant's actions.

**JURISDICTION**

7.    This is an action for: (a) false designation of origin and unfair competition arising

2

under 15 U.S.C. § 1125(a); (b) trademark infringement arising under 15 U.S.C. § 1114; (c) unfair competition arising under state law including the California Business & Professions Code § 17200 *et seq.*; (d) trademark infringement arising under the common law of the State of California; (e) common law unfair competition; (f) violation of California Business & Professions Code § 17500; and (g) unjust enrichment.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1338 (a) and (b) (a state law claim of unfair competition joined with a substantial and related claim under federal trademark laws), 28 U.S.C. § 1367 (supplemental jurisdiction because Yeti Data's state law claims are substantially related to Yeti Data's federal claims), and the doctrines of ancillary and pendant jurisdiction.

9.      This Court has personal jurisdiction over Defendant because on information and belief, Snowflake, Inc. is a California citizen. Snowflake, Inc. has purposefully availed itself of the privilege of conducting business in the State of California, including but not limited to by registering with the California Secretary of State as a foreign corporation. Moreover, Defendant has had, and continues to have, regular and systematic contacts with the State of California and this judicial district. On information and belief, Defendant has conducted, and continues to conduct, business within the State of California and within this judicial district. Furthermore, Defendant has committed acts of trademark infringement, false designation of origin, federal and state unfair competition, and violations of California Business & Professions Code § 17500 giving rise to this action in the State of California and within this judicial district. On information and belief, Defendant has, and continues to, advertise, promote, offer for sale, and sell products and services bearing the infringing SNOWFLAKE mark in the State of California and within this judicial district. Moreover, Defendant knew and knows that its infringement would harm Yeti Data, which Defendant knows is headquartered in California.

10.      This Court also has personal jurisdiction over Defendant based on Cal. Civ. Proc. Code § 410.10. On information and belief, Defendant has (a) continuously and systematically solicited business in the State of California and within this judicial district; (b) have transacted and done substantial business in the State of California and within this judicial district; (c) have

COMPLAINT

1    wrongfully and willfully caused injury to Yeti Data in the State of California and within this

2    judicial district, and said injury was reasonably foreseeable.

3

4                                    **VENUE**

5         11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b), (c), and

6    (d) at least because this Court has personal jurisdiction over each of the parties as alleged

7    throughout this Complaint and because, on information and belief, Defendant conducts

8    substantial business directly and/or through third parties or agents in this judicial district by

9    selling and/or offering infringing products and services for sale, and/or by conducting other

10   business, in this judicial district.

11                                **THE PARTIES**

12        12.    Plaintiff Yeti Data is a Delaware corporation registered as a foreign business entity

13   with the California Secretary of State. Yeti Data is, and at all relevant times was, engaged in the

14   business of, amongst others, creating, distributing and marketing big data and consumer data

15   management solutions, and data analytics software of the highest quality.

16        13.    On information and belief, Defendant Snowflake, Inc., f/k/a Snowflake

17   Computing, Inc., is a limited liability company incorporated under the laws of Delaware, with its

18   principal place of business 450 Concar Drive, San Mateo, CA 94402. Based on Defendant's

19   Statement of Information filed with the California Secretary of State on July 25, 2019, Defendant,

20   like Plaintiff, is engaged in "DATA ANALYTIC SOFTWARE SALES". (Exhibit 1) In its

21   previous California SOS filing Defendant's business was identified as "SAAS OF CLOUD

22   DATA WAREHOUSING". (Exhibit 2)

23                    **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

24        **I.    Yeti Data's Business and Trademarks**

25        14.    In or around 2012 – 2013 Yeti Data was born when a group of veteran executives

26   with experience gained at such powerhouse institutions as SAP, IBM, SAS, and McKinsey &

27   Company came together to create a sophisticated answer to the big data management conundrum.

28        15.    Also around that time, the team conceived of its SNOWFLAKE branding to

                                        4

                                                              COMPLAINT

identify and distinguish its unique IT solutions.

16.    In addition to its strong trademark rights at common law, Yeti Data applied for a respective trademark registration with the United States Patent and Trademark Office (USPTO) to protect its rights.

17.    When the trademark application was published for opposition, no entity or person, including Defendant, opposed it.

18.    In recognition of the distinctiveness of the YETI SNOWFLAKE mark, the USPTO issued Registration No. 5,500,123 (the "'123 Registration") in International Class 9 for "[c]omputer software for advertising, marketing, and commercial transaction data management and analytics." The '123 registration as issued by the USPTO recognizes Yeti Data's first use dates of May 1, 2014 which predates any first used dates alleged by Defendant. A copy of the '123 registration is attached as Exhibit 3.

19.    Yeti Data also owns a trademark registration for its SNOWFLAKE mark covering all 27 EU Member States and the United Kingdom. A copy Yeti Data's EU SNOWFLAKE trademark registration is attached as Exhibit 4. No one including Defendant opposed Yeti Data's EU trademark registration for SNOWFLAKE.

20.    Furthermore, Yeti Data obtained U.S. Trademark Registration No. 5,510,650 (the "'650 Registration') in International Class 9 for "[c]omputer software for advertising, marketing, and commercial transaction data management and analytics." The '650 registration as issued by the USPTO recognizes Yeti Data's first use dates of May 1, 2014 which predates any first used dates alleged by Defendant. A copy of the '650 registration is attached as Exhibit 5. Like the '123 and EU Registrations, the '650 Registration was not opposed by anyone including Defendant.

21.    For more than half a decade, Yeti Data has devoted extensive time and effort to building and promoting its valuable trademarks and has continuously used them in connection with its cutting edge IT solutions.

22.    Shown below are true and accurate representative illustrations of just a few of Yeti Data's use of its SNOWFLAKE marks in presentations, on websites, and in brochures:

COMPLAINT







6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



# +Yeti Data
## A marketer's best-IT friend

Yeti Data presents a remarkable new marketing service- the Private Data Exchange. The Yeti Data Private Data Exchange service gives clients a cloud-based service to check-in, analyze and synthesize raw data into strategic marketing information for use in marketing innovation initiatives. The Yeti Data Exchange is designed with a focus on helping clients tap all of their dark internal data and enriching this with 3rd party reference data, and unstructured social media data to build the richest customer profiles possible.

Yeti calls this "snowflaking" the customer data. The snowflake begins with the purest crystal of internal customer data and begins branching out from there as each successive customer data point is matched to the record building out a complete snowflake profile on the customer. The result is a very rich data profile that goes way beyond the traditional demographics including behavioral and psychographic elements. These rich customer snowflakes can be used for:





**Dynamic Customer Segmentation:** segment using social and behavioral data, iteratively and rapidly not just once a year.

**Tailored User Experiences:** personalize the customer user experience across all channels, triangulating preferences and intuiting channel affinities.

**Loyalty Marketing:** Customize products & services more accurately, support richer customer mobile apps

**Increase Conversion:** Enrich leads with social & 3rd party data for better offer targeting, driving more efficient customer journey.

**Channel Loyalty Intensity:** Understand partner share of practice, overall performance capacity, and suss out portfolio selling opportunities.

**Couponing & Promotions:** Real-time recognition and reward of customer behavior, better targeted coupons based on life-style and social profiles.






3

7





+

# How Yeti Snowflake works:

## Correlating internal, reference and social data into customer snowflakes

Simply put Yeti Data allows marketers to get more out of their customer data by correlating all of the disparate and conflicting data into one Customer Snowflake Profile.  Marketers can manage and analyze their customer data simultaneously, combining data one way, then another in order to look at different perspectives in the data.  Traditional data management solutions merge all the data together clipping off overlapping, conflicting data points.  With the Yeti Data "snowflaking" approach marketers lose none of the richness of their customer data that's hidden in overlapping details.  They can analyze conflicts in the data and make decisions about the overall synthesis into information based on discerning the context of conflicting data points.

COMPLAINT

23.     The '123 registration constitutes *prima facie* evidence of Yeti Data's exclusive right to use and ownership of the YETI SNOWFLAKE mark in connection with the goods and services identified in the registration.

**II.        Defendant's Wrongful Acts**

24.     On information and belief, Defendant began its operations after Yeti Data.

25.     Apparently unable to conceive of a mark as innovative as Yeti Data's marks, Defendant decided to compete unfairly against Yeti Data by engaging in the unlawful, deceptive, and inequitable activities described herein, to profit from the goodwill and recognition associated with the Yeti Data's valuable trademarks.

26.     On information and belief, Defendant did not acquire the www.snowflake.com domain until years after Yeti Data filed its trademark application and years after Yeti Data began using its valuable trademarks.

27.     In fact, the Internet Archive suggests that Defendant did not begin using the infringing www.snowflake.com domain until August 2018 – four years after Yeti Data sought registered protection of its valuable trademark:



COMPLAINT

28.     On information and belief, as indicated in its filings with the California Secretary of State, until January 22, 2019, Defendant defined its business as "SAAS OF CLOUD DATA WAREHOUSING". A copy of the respective filing is attached as Exhibit 2.

29.     On information and belief, as indicated in its filings with the California Secretary of State, it was not until July 25, 2019 that Defendant re-defined its business as "DATA ANALYTIC SOFWARE SALES" thus offering products and services identical to those rendered by Yeti Data under highly confusingly similar trademarks to Yeti Data's YETI SNOWFLAKE and SNOWFLAKE marks. A copy of the respective filing is attached as Exhibit 1.

30.     Defendant's progressive encroachment was further illustrated in a June 18, 2020 webinar by industry analyst firm Gartner. In that webinar the analyst explained that if Defendant starts to position itself as an enterprise data platform, which its, it is a logical next step that Defendant would expand beyond the core of warehousing components to encompass both data analytics and even operational offerings.

31.     Representative examples of Defendant's encroaching and infringing use of Yeti Data's valuable trademarks for products and services identical or highly similar to those rendered by Yeti Data and identified in its trademark registrations are shown below:



COMPLAINT



11

32.     On information and belief, Defendant's infringing products and services are marketed in the same channels of trade as Yeti Data's original products and services and sold nationwide and internationally to the same types of customers that would purchase Yeti Data's original services.

33.     In fact, Defendant promotes their infringing products and services in such an extensive way that it has begun to or is about to saturate the market with publicity for their products and services bearing the infringing SNOWFLAKE mark. This is likely to cause purchasers of Yeti Data's products and services to believe that they originates from or is affiliated with Defendant; or worse cause the mistaken belief among consumers that Yeti Data is infringing Defendant's purported mark even though Defendant is the junior user.

34.     Defendant's use of a highly confusingly similar mark to the ones owned by Yeti Data, a known competitor, on products identical or at least highly similar to those of Yeti Data, marketed and sold in the same channels of trade, is likely to cause consumers to be confused as to whether Yeti Data is the source or sponsor of, or is otherwise affiliated with Defendant or Defendant's products.

35.     On information and belief, Defendant's unauthorized use of the infringing SNOWFLAKE mark is an attempt to falsely associate Defendant's products and services with Yeti Data or to otherwise trade upon Yeti Data's valuable reputation and good will in its YETI marks.

36.     Yeti Data is informed and believes, and on that basis alleges, that Defendant's use of the infringing SNOWFLAKE mark is designed and intended to cause consumer confusion, mistake or deception as to the source of Defendant's products.

37.     Yeti Data is informed and believes, and on that basis alleges, that it is Defendant's intention to cause consumers including prospective customers to believe that Defendant's products and services are associated with Yeti Data or its valuable marks.

38.     At no point in time has Yeti Data ever given Defendant a license, permission or authority to use and/or display the infringing SNOWFLAKE mark in connection with any of Defendant's products or services.

COMPLAINT

39.     Without permission or consent from Yeti Data, Defendant has infringed Yeti Data's valuable marks in commerce by promoting, advertising, selling, and/or offering for sale identical or highly similar IT products and services unlawfully bearing marks highly confusingly similar to Yeti Data's valuable marks.

40.     On information and belief, Defendant, fueled by their superior financial position and barefaced ability to outmuscle Yeti Data, saw an opportunity to trade off the good will Yeti Data created in its valuable marks.

41.     To add insult to injury, Defendant seems to have set out to totally usurp Yeti Data's brand equity by not only infringing Yeti Data's rights in its SNOWFLAKE trademarks but by infringing Yeti Data's valuable company name and its YETI related trademarks.

42.     Depicted below are examples of Defendant's unauthorized use of Yeti Data's YETI marks:



COMPLAINT





43.     Full printouts concerning the infringing YETI uses depicted above are attached hereto as Exhibit 6 and Exhibit 7.

44.     On information and belief, Defendant's infringement of Yeti Data's valuable trademarks is no isolated incident. Rather, Defendant applies a laissez faire approach when it comes to the intellectual property rights of others.

45.     On information and belief Defendant even appears to attempt to free-ride on the

14

1  goodwill of the AMAZON and AWS trademarks by purchasing AMAZON SNOWFLAKE and

2  AWS as keywords in its SEO advertising efforts.

3          46.      An Excerpt from a respective WordStream analysis is depicted below. The full

4  WordStream report is attached hereto as Exhibit 8.

WordStream Free Keyword Tool                                              https://app.wordstream.com/fkt/app

> snowflake sql                                                                                        ❯

> snowflake san mateo                                                                                  ❯

> snowflake training                                                                                   ❯

> snowjapan                                                                                            ❯

> snowflake technology                                                                                 ❯

> what is snowflake database                                                                           ❯

> hadoop data lake                                                                                     ❯

> amazon snowflake                                                                                     ❯

> warehouse prices                                                                                     ❯

> snowflake analytics                                                                                  ❯

Showing 25 of 500 keywords for **snowflake.com**    **EMAIL ALL MY KEYWORDS**

| Keywords | Search volume | CPC | Competition | Search volume | CPC | Competition |
|---|---|---|---|---|---|---|
| snowflake | 450,000 | $1.46 | High | 9,440 | $0.05 | High |
| snowflake computing | 5,400 | $2.31 | High | 180 | $2.25 | Medium |
| snowflake data warehouse | 2,900 | $6.17 | High | 230 | $6.90 | High |
| snowflake database | 2,900 | $3.77 | High | 180 | $0.05 | High |
| snowflake software | 1,900 | $1.70 | High | 120 | $0.05 | Low |
| aws snowflake | 1,900 | $3.28 | High | 110 | $0.05 | Low |

**EMAIL ALL MY KEYWORDS**

2 of 4                                                              6/18/2020, 10:12 PM

15

COMPLAINT

**III.    Defendant Refuses to Cease Infringing Yeti Data's Trademarks**

47.    On June 11, 2020, Yeti Data sent Defendant a letter requesting that it cease its use of the infringing SNOWFLAKE mark and inviting Defendant to enter into discussions to explore an amicable resolution of this matter. A copy of this letter is attached hereto as Exhibit 9.

48.    On June 19, 2020, Defendant responded. Aside from containing a number of baseless allegations Defendant's response is best summarized by the final sentence of its response: "We trust that this letter will put an end to Yeti Data's meritless claims against Snowflake."  A copy of this letter is attached hereto as Exhibit 10.

49.    Yeti Data subsequently sent Defendant a draft of this Complaint before filing it with the Court in a further attempt to resolve this matter without burdening the Court but to no avail.

50.    In light of Defendant's unwillingness to even explore an amicable resolution, Yeti Data was left with no choice but to resort to this Court.

**IV.    Injury to Yeti Data**

51.    Because Yeti Data has no control over the quality of Defendants' infringing products and services, or the marketing campaign that promotes Defendants' infringing products and services, Defendant's infringing use of the infringing SNOWFLAKE mark results in Yeti Data's loss of control of its business reputation and good will.

52.    Additionally, as discussed above, Defendant's continued substantial marketing campaign is so saturating the market with Defendant's infringing mark, that consumers will erroneously believe that Yeti Data's products and services emanate from Defendant or an entity affiliated with or sponsored by Defendant. Furthermore, as part of this reverse confusion, consumers will, and in fact already have, erroneously believe that Yeti Data is the unauthorized infringer of Defendant's purported SNOWFLAKE mark, causing injury to Yeti Data's reputation and goodwill in its business and valuable marks.

53.    Defendant's unauthorized use of the infringing SNOWFLAKE mark has and will continue to have adverse effects on the value and distinctive quality of Yeti Data's valuable marks including, but not limited to, the marks' identity-evoking quality by lessening their

16

1    capacity to identify and distinguish Yeti Data as the exclusive source of YETI SNOWFLAKE
2    marked products an services.

3        54.    Since Yeti Data owns all rights in the YETI SNOWFLAKE mark, Defendant's use
4    of the mark is illegal, flagrant, and unabashed. Defendant's use of the infringing SNOWFLAKE
5    mark is in bad faith and evidences Defendant's intent to deceive and mislead consumers into
6    believing that Defendant's products and services are sponsored, licensed, authorized by,
7    connected, affiliated, or otherwise associated with Yeti Data and its valuable trademarks.

8        55.    Yeti Data has sustained and will continue to sustain damages as a result of
9    Defendant's wrongful acts.

10        56.    On information and belief, unless enjoined by this Court, Defendant intends to
11    continue to infringe Yeti Data's marks and otherwise profit from the good will attributable to the
12    marks. Yeti Data has no adequate remedy at law to redress all of the injuries Defendant has
13    caused and intends to cause. Hence, Yeti Data will continue to suffer irreparable injury, harm, and
14    damage and sustain lost profits as a direct and proximate result of Defendant's wrongful acts
15    alleged above, unless and until Defendant's actions alleged herein are enjoined by this Court.

16        57.    Furthermore, as discussed above, Defendant receives substantial revenue in
17    connection with their marketing, distribution, and sale of their infringing products and services.
18    On information and belief, Defendant's willful infringement of Yeti Data's marks diverts sales
19    from Yeti Data to Defendant and thereby robs Yeti Data of revenue and profit that would
20    rightfully be its own. Therefore, Yeti Data is entitled to damages in an amount to be determined at
21    trial.

22                            **CAUSES OF ACTION**
23                               **COUNT I**
24        **[False Designation of Origin and Unfair Competition (15 U.S.C. § 1125(a))]**

25        58.    Yeti Data repeats and realleges each and every allegation in paragraphs 1-56 of
26    this Complaint as though fully set forth herein.

27        59.    Defendant makes, distributes, uses, imports, offers to sell, and sells in the U.S.
28    products and services with branding that directly infringes Yeti Data's valuable marks in violation

                                    17
                                                                COMPLAINT

of 15 U.S.C. § 1125(a).

60.     The use of the SNOWFLAKE mark by Defendant constitutes a false indication of origin, affiliation and/or sponsorship, and a false description or representation that wrongfully and falsely designates Defendant's products as originating from Yeti Data, and being associated, affiliated or connected with, approved or sponsored by Yeti Data. Furthermore, as Defendant, the junior user, continues its substantial marketing campaign, the relevant public is likely to mistakenly believe that Yeti Data's use of its marks originates from, or is associated, affiliated or connected with, or approved or sponsored by Defendant.

61.     As a direct and proximate result of Defendant's wrongful acts, Yeti Data has suffered and continues to suffer and/or is likely to suffer damage to its trademark, business reputation, and goodwill. Defendant will continue to use, unless restrained, its infringing mark, name, or other marks, and names confusingly similar to or colorable imitations of Yeti Data's marks and will cause irreparable damage to Yeti Data. Yeti Data has no adequate remedy at law and is entitled to an injunction restraining Defendant, their officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of false designation of origin, affiliation or sponsorship. Yeti Data is entitled to said injunctive relief based on 15 U.S.C. §1116.

62.     Furthermore, Yeti Data is entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts. Yeti Data is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to suffer by reason of Defendant's acts of false designation of origin, affiliation or endorsement.

63.     Yeti Data is also entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of their wrongful acts as well as business opportunities received from Defendant's wrongful acts. Yeti Data is presently unable to ascertain the extent of the gains, profits, and advantages as well as business opportunities Defendant has realized by reason of their acts of false designation of origin, affiliation or endorsement.

64.     Since Defendant's use of the infringing SNOWFLAKE mark has been and

18

continues to be intentional, deliberate, willful, and in bad faith, Yeti Data is entitled to damages pursuant to 15 U.S.C. §1117, including, but not limited to, the costs of this action as well as reasonable attorney's fees and costs.

**COUNT II**

**[Trademark Infringement (15 U.S.C. § 1114)]**

65.     Yeti Data repeats and realleges each and every allegation in paragraphs 1-63 of this Complaint as though fully set forth herein.

66.     Yeti Data owns valid and enforceable registered trademark rights (No. 5,500,123) for its YETI SNOWFLAKE mark.

67.     Without permission or consent of Yeti Data, Defendant has used and continues to use in commerce reproductions, copies or colorable imitations of Yeti Data's YETI SNOWFLAKE mark in connection with distributing, selling, offering for sale, advertising, and/or promotion of Defendant's goods and services.

68.     Without permission of Yeti Data, Defendant is reproducing, copying, or colorably imitating Yeti Data's YETI SNOWFLAKE mark and applying such reproductions, copies, and colorable imitations to merchandise, labels, signs, packages, or advertisements intended to be used in commerce upon or in connection with distributing, selling, offering for sale, advertising and/or the promotion of goods and services on or in connection with which such use has already caused confusion or mistake, and is likely to continue to cause confusion, or to cause mistake, or to deceive.

69.     Yeti Data is informed and believes, and alleges on that basis, that the activities of Defendant complained of herein constitute willful and intentional infringements of Yeti Data's YETI SNOWFLAKE mark, and that Defendant did so with the intent to unfairly compete against Yeti Data, to trade upon Yeti Data's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by, originate from, or are approved by Yeti Data, when in reality and truth and fact they are not.

70.     Defendant's extensive use of the infringing SNOWFLAKE mark in the United

19

COMPLAINT

States and internationally is further likely to confuse consumers and create the misimpression that products and services bearing Yeti Data's marks are affiliated with Defendant such that Yeti Data's reputation will injured and the good will built in its marks will be impaired.

71.     Yeti Data is informed and believes, and on that basis alleges, that Defendant had actual knowledge of Yeti Data's ownership and prior use of its YETI SNOWFLAKE mark, and without the consent of Yeti Data, has willfully violated 15 U.S.C. § 1114.

72.     The aforesaid acts of the Defendant have been intentional, deliberate, willful, and in bad faith.

73.     Defendant's aforesaid acts have caused, are causing, and will continue to cause, great and irreparable injury to Yeti Data and unless enjoined by this Court, said irreparable injury will continue. Therefore, Yeti Data is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, damages pursuant 15 U.S.C. § 1117(a), including Defendant's profits, and/or California Brewing Companies actual damages and/or the cost of this action. Yeti Data is further entitled to reasonable attorneys' fees and costs because of Defendant's conduct.

## COUNT III

### [Trademark Infringement Under the Common Law of the State of California]

74.     Yeti Data repeats and realleges each and every allegation in paragraphs 1-72 of this Complaint as though fully set forth herein.

75.     As shown above, Yeti Data has a protectable interest in the YETI SNOWFLAKE mark.

76.     Defendant's use of the infringing SNOWFLAKE mark is likely to cause consumer confusion as to whether Defendant's products originate from Yeti Data, or are associated, affiliated or connected with or approved or sponsored by Yeti Data.

77.     Defendant's use of the infringing SNOWFLAKE mark and promotion of the same in an aggressive market saturating marketing campaign is likely to cause consumer confusion as to whether Yeti Data's products in fact originate from Defendant, infringe Defendant's purported rights, or are associated, affiliated or connected with or approved or sponsored by Defendant.

78.     The aforesaid acts of Defendant have caused, and are causing, great monetary

COMPLAINT

1  harm to Yeti Data. Yeti Data is entitled to recover from Defendant the actual damages that it

2  sustained and/or is likely to sustain as a result of Defendant's wrongful acts. Yeti Data is

3  presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is

4  likely to sustain by reason of Defendant's acts of trademark infringement.

5          79.    Defendant's willful acts of trademark infringement and unfair competition under

6  California common-law constitute fraud, oppression and malice. Accordingly, Yeti Data is

7  entitled to exemplary damages.

8          80.    Furthermore, as a direct and proximate result of Defendant's wrongful acts, Yeti

9  Data has suffered and continues to suffer and/or is likely to suffer damage to its business

10  reputation and goodwill. Defendant will continue to infringe, unless restrained by this Court, Yeti

11  Data's valuable marks or other marks confusingly similar to the Yeti Data's marks and will cause

12  irreparable damage to Yeti Data. Plaintiff has no adequate remedy at law and is entitled to an

13  injunction restraining Defendant, their officers, agents, and employees, and all persons acting in

14  concert with Defendant, from engaging in further uses of the infringing SNOWFLAKE mark or

15  any confusingly similar variations thereof.

16                                    **COUNT IV**

17          **[State Unfair Competition and State Unfair and Deceptive Trade Practices]**

18          81.    Yeti Data repeats and realleges each and every allegation in paragraphs 1-80 of

19  this Complaint as though fully set forth herein.

20          82.    Defendant has been, and is, engaged in unlawful, unfair and/or fraudulent business

21  practices in violation of §17200 *et seq*. of the California Business & Professional Code. Amongst

22  others, Defendant has been and is passing off their goods as those of Yeti Data, causing a

23  likelihood of confusion or the likelihood of misunderstanding as to the source, sponsorship, or

24  approval of Defendant's products and services and/or as to Defendant's affiliation, connection, or

25  association with Yeti Data, and/or otherwise damaging the public.

26          83.    Defendant's actions, as complained of herein, have been and will continue to be

27  willful and intentional. Defendant's conduct constitutes unfair and deceptive acts or practices in

28  the course of a business, trade, or in violation of the statute or common law of all US states,

COMPLAINT

including but not limited to: laws of California, California Business & Professions Code §17200 *et seq.*; New York, N. Y. GEN. BUS. L. §349; South Carolina, S. C. CODE ANN. §§39-5-10 to 39-5-560; and Utah, UTAH CODE ANN. §13-5-1, *et seq.*; and the unfair and deceptive trade practices statutes and common law of other states, including but not limited to: Illinois, 815 ILL. COMP. ANN. 510/1 to 510/7; Maine, ME. Rev. Stat. TIT. 10, §§ 1211-1216; Minnesota, Minn. Stat. Ann. §§ 325D.43-325D.48; and Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04.

84.     Defendant's unauthorized use of the infringing SNOWFLAKE mark has caused and is likely to continue to cause substantial and irreparable injury to the public and to Yeti Data and Yeti Data is entitled to recover damages, punitive damages, costs, and reasonable attorneys fees. Yeti Data has not only lost sales but has suffered damage to its goodwill and reputation in the marketplace that money cannot compensate. Such irreparable injury will continue unless Defendant is enjoined by this Court from further committing unfair and unlawful business practices against Yeti Data.

## COUNT V

### [Unfair Competition Under the Common Law of the State of California]

85.     Yeti Data repeats and realleges each and every allegation in paragraphs 1-83 of this Complaint as though fully set forth herein.

86.     By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of forward and reverse confusion among the purchasing public in this judicial district and elsewhere, thereby unfairly competing with Yeti Data in violation of the common law of the state of California.

87.     By its actions, Defendant has injured and violated the rights of Yeti Data in an amount to be determined at trial.

88.     By its actions, Defendant has irreparably injured Yeti Data. Such irreparable injury will continue unless Defendant is enjoined by this Court from further violation of Yeti Data's rights, for which Yeti Data has no adequate remedy at law.

///

///

22

COMPLAINT

**COUNT VI**

**[Violation of California Business & Professions Code § 17500]**

89. Yeti Data repeats and realleges each and every allegation in paragraphs 1-87 of this Complaint as though fully set forth herein.

90. Defendant's acts, as alleged herein, constitute false or misleading statements under California Business & Professions Code § 17500 *et seq.*

91. Defendant's false or misleading statements were and continue to be willful and intentional, as is evidenced, among others, by the fact that Defendant started to tout Plaintiff's the infringing SNOWFLAKE mark as their own.

92. Defendant's false or misleading statements will continue unless enjoined by this Court. Yeti Data has suffered and continues to suffer irreparable injury, for which it has no remedy at law as a result of Defendant's false or misleading statements.

93. Defendant's false or misleading statements have caused and are likely to cause substantial injury to Yeti Data, and Yeti Data is entitled to disgorgement of Defendant's profits and injunctive relief.

**COUNT VII**

**[Unjust Enrichment]**

94. Yeti Data repeats and realleges each and every allegation in paragraphs 1-92 of this Complaint as though fully set forth herein.

95. As a result of Defendant's conduct, Defendant has been unjustly enriched at the expense of Yeti Data and the law thereby implies a contract by which Defendant must pay to Yeti Data the amount by which, in equity and good conscience, the Defendant has been unjustly enriched at the expense of Yeti Data.

**PRAYER FOR RELIEF**

WHEREFORE, Yeti Data prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

23

COMPLAINT

1    1.    That the Court render a final judgment in favor of Yeti Data and against Defendant

2    on all claims for relief herein;

3    2.    That the Court render a final judgment declaring Defendant has violated and

4    willfully violated the provisions of 15 U.S.C. § 1114 by infringing Yeti Data's trademark rights in

5    its federally registered YETI SNOWFLAKE mark;

6    3.    That the Court render a final judgment declaring that Defendant has violated and

7    willfully violated the provisions of 15 U.S.C. § 1125(a) by using a false designation of origin

8    through the marketing, sale and promotion of Defendant's products and related services;

9    4.    That the Court render a final judgment declaring that Defendant has violated the

10    provisions of California Business & Professions Code § 17200 *et seq.* and the respective laws of

11    other states by unfairly competing with Yeti Data;

12    5.    That the Court render a final judgment declaring that Defendant has violated the

13    provisions of California Business & Professions Code § 17500 *et seq.* by engaging in unlawful,

14    unfair, and fraudulent business practices;

15    6.    That the Court render a final judgment declaring that Defendant has violated

16    California Common Law by infringing Yeti Data's trademark rights in its federally registered

17    YETI SNOWFLAKE mark;

18    7.    That the Court render a final judgment declaring that Defendant has violated

19    California common law by unfairly competing with Yeti Data;

20    8.    That Defendant, their officers, principals, agents, servants, employees, attorneys,

21    successors, and assigns and all other persons acting for, with, by, through, or under authority from

22    Defendant, or in concert or participation with any of them who receive actual notice of the

23    injunction by personal service or otherwise, be enjoined permanently, from:

24         a.    using Yeti Data's YETI SNOWFLAKE mark in connection with

25         Defendant's goods and services, in advertising, promoting, selling or offering to sell

26         Defendant's goods and services, and/or using confusingly similar variations of Yeti Data's

27         YETI SNOWFLAKE mark or colorable imitations thereof in any manner that is likely to

28         create the impression that Defendant's goods and services originate from Yeti Data, are

24

COMPLAINT

1    endorsed by Yeti Data, or are connected in any way with Yeti Data;

2         b.      copying, reproducing, distributing, displaying, and/or importing,

3    manufacturing, or producing any products or rendering any services bearing copies,

4    confusingly similar or colorable imitations of Yeti Data's YETI SNOWFLAKE mark;

5         c.      passing off, palming off, or assisting in passing off or palming off

6    Defendant's goods and services as those of Yeti Data or otherwise unfairly competing

7    with Yeti Data in any manner whatsoever;

8         d.      falsely designating the origin of Defendant's goods or services;

9         e.      causing a likelihood of confusion or reverse confusion or injury to Yeti

10   Data's business reputation;

11        f.      and otherwise infringing the YETI SNOWFLAKE mark.

12   9.      That Defendant be ordered to deliver up for impoundment and for destruction all

13   infringing materials in its possession, labels, tags, signs, advertising, promotional material,

14   stationary or other materials, whether electronic or otherwise, in their possession, custody, or

15   control that are found to adopt, infringe, or otherwise unfairly compete with Yeti Data and its

16   products, pursuant to 15 U.S.C. § 1125 and all other state and federal law.

17   10.     That Defendant be ordered to recall all products sold or services rendered in the

18   U.S. bearing the YETI SNOWFLAKE mark or any confusingly similar variation thereof, which

19   have been delivered by Defendant or under its authority, to any customer in the U.S., including,

20   but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver

21   to each customer a copy of this Court's order as it relates to said injunctive relief against

22   Defendant.

23   11.     That Defendant be directed to file with this Court and serve on Yeti Data within

24   thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in

25   detail the manner and form in which Defendant has complied with the injunction pursuant to 15

26   U.S.C. § 1116;

27   12.     That Defendant be compelled to render a full and complete accounting to Yeti

28   Data for any and all profits, gains, and advantages derived by Defendant from the sale or

COMPLAINT

distribution of infringing goods in the U.S. as described in this Complaint and the advantages or business opportunities received from the foregoing acts of infringement;

13.     That Defendant be compelled to account for and turn over to Yeti Data all gains, profits, and advantages derived by Defendant for making false or misleading statements and engaging in acts of unfair competition in violation of California Business & Professions Code §§ 17200 and 17500, as well as such gains, profits, and advantages available under federal, state, and common law;

14.     That the Court enter judgment for Yeti Data against Defendant for all damages suffered by Yeti Data caused by the acts forming the basis of this Complaint and for any profits or gain by Defendant attributable to infringement of Yeti Data's intellectual property in amounts to be determined at trial;

15.     That Defendant's actions be deemed willful;

16.     That the amount of damages be increased three times and the award of Defendant's profits be enhanced and increased as many times as the Court deems appropriate pursuant to 15 U.S.C. § 1117;

17.     That the Court enter judgment for Yeti Data against Defendant for punitive damages, in amounts to be determined at trial, based on Defendant's willful and deliberate infringement of the YETI SNOWFLAKE mark and to deter such conduct in the future;

18.     That Defendant be required to pay to Yeti Data the costs and disbursements, including reasonable attorneys' fees, that Yeti Data has and will incur in this action pursuant to, among others, 15 U.S.C. §1117(a) *et seq.* and the state statutes cited in this Complaint;

19.     Award Yeti Data pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing;

20.     That Defendant be ordered to pay for the costs of remedial advertising to counter the effects of any forward or reverse confusion arising from Defendant'ss substantial marketing campaign; and

21.     Grant such other, further and different relief as the Court deems just and proper.

///

COMPLAINT

1    Dated: July 3, 2020                          Respectfully submitted,

2

3                                                 /s/ Christian W. Liedtke
                                                  Christian W. Liedtke (SBN 297523)
4                                                 cw.liedtke@acuminis.biz
                                                  acuminis
5                                                 3420 Bristol Street, 6th Floor
                                                  Costa Mesa, CA 92626
6                                                 Phone: (949) 698-7840
                                                  Facsimile: (949) 698-7861
7

8                                                 *Attorney for Plaintiff Yeti Data, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**JURY TRIAL DEMAND**

Yeti Data respectfully demands a trial by jury on all claims and issues so triable.

Dated: July 3, 2020                                    Respectfully submitted,

                                                       /s/ Christian W. Liedtke
                                                       Christian W. Liedtke (SBN 297523)
                                                       cw.liedtke@acuminis.biz
                                                       acuminis
                                                       3420 Bristol Street, 6th Floor
                                                       Costa Mesa, CA 92626
                                                       Phone: (949) 698-7840
                                                       Facsimile: (949) 698-7861

                                                       *Attorney for Plaintiff Yeti Data, Inc.*

COMPLAINT